**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| DEBRA EPTING, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-385-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint for Judicial Review [DE 1], filed by Plaintiff Debra Epting on October 17, 2014, and Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 16], filed by Plaintiff on March 9, 2015. Plaintiff requests that the Administrative Law Judge's decision to deny her disability benefits be reversed or, alternatively, remanded for further proceedings. The Commissioner filed a response on May 20, 2015, and Plaintiff filed a reply on June 15, 2015. For the following reasons, the Court grants Plaintiff's request for remand consistent with this opinion.

**PROCEDURAL BACKGROUND**

This is Plaintiff's fourth application for disability. She first applied in 1992 and was denied. She applied again in December 2004 and July 2010, alleging a disability onset date of September 1, 2004, and was denied both times. Plaintiff filed a fourth application for Disability and Disability Insurance Benefits on October 11, 2011, again alleging a disability onset date of September 1, 2004. After her application was denied initially and on reconsideration, Plaintiff requested an administrative hearing. A hearing was held on April 17, 2013, at which Plaintiff and a Vocational Expert testified. On May 22, 2013, Administrative Law Judge ("ALJ") Henry Kramzyk issued an

opinon finding that Plaintiff not disabled. On August 14, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2004, through her date last insured of December 31, 2009.
>
> 3. Through the date last insured, the claimant had the following severe impairments: hypertension, inflammatory polyarthritis, and obesity.
>
> 4. Through the date last insured, the claimant does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments in 20 C.F.R. Part 404, Subppart P, Appendix 1.
>
> 5. The claimant had the residual functional capacity ("RFC") to lift and/or carry, push and/or pull 20 pounds occasionally, and 10 pounds frequently; sit about 6 hours in an 8 hour work day; and stand and/or walk about 6 hours in an 8 hour work day. The claimant could never climb ladders, ropes or scaffolds; but could occasionally climb ramps and stairs, balance, stoop, crouch, kneel or crawl. The claimant needed to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a clerk general and mailroom clerk.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 1, 2004, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

Pursuant to 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final

judgement in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff had lumbar surgery in 2000 and 2001. In 2001 through 2004, she experienced residual effects of the surgery including back and leg pain. In April 2004, Plaintiff was diagnosed with rheumatoid arthritis. Since her diagnosis, Plaintiff has gained significant weight and reported constant morning stiffness with pain and swelling and increasingly poor shoulder, knee, ankle, fingertip, and wrist mobility. Plaintiff has received treatment for her arthritis from several primary medical providers: Dr. Parikh, Dr. Nayak, Dr. Joyce, and Dr. Serushan. Dr. Parikh treated Plaintiff with joint injections of the knees and elbows to minimize swelling and directed the Plaintiff to not stand more than two hours in an eight hour work day and use a cane with ambulation to help balance her weight on her ankles. Dr. Serushan noted very tender areas in Plaintiff's wrists, feet, knees, and elbows and advised Plaintiff to limit heavy exertion. An examination performed by Dr. Nayak in 2009 found consistent tender points. Dr. Joyce also found tenderness and pain of the shoulder right lateral epicondyle and clinical evidence of persistent ankle swelling and degenerative changes of the metatarsal phalangeal joints bilaterally with hypertrophic spurring. Plaintiff reported to Dr. Joyce that she suffered from fatigue and difficulty concentrating due to joint pain.

At the April 17, 2013, hearing, Plaintiff testified that since her alleged onset date in 2004, she has suffered from chronic swelling in her right knee and stiffness and pain in her joints with constant pain in her back, knees, elbows, writs, shoulders, hips, and neck. Plaintiff testified that she frequently feels tired, often lies in bed for most of the weekend, and is frustrated by her lack of energy and increased weight. Plaintiff testified that she also suffers skin rashes, chronic obstruction

3

pulmonary disorder (COPD), and emphysema that impact her breathing and stamina. Plaintiff testified that she takes several medications for her disorders and takes opioid medication to alleviate her pain. Plaintiff testified that the medications rarely eased her symptoms and occasionally caused adverse side effects that impaired her concentration.

Plaintiff testified that since her alleged onset date, she occasionally provides childcare for her several grandchildren and is able to perform some basic household chores when necessary. Plaintiff testified that she rarely picks up her grandchildren without shoulder and back pain or remains seated in one place for more than fifteen minutes before her joint pain becomes unbearable and she cannot turn her neck.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, the claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

5

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [claimant's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Listing**

Plaintiff argues that the ALJ improperly evaluated whether her impairments medically equaled Listing 14.09. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal any listed impairment.

At Step Three of the disability inquiry, an ALJ must determine whether the claimant's impairments meet or equal the criteria of an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An individual suffering from an impairment that meets or is the equivalent of the description of a Listing is conclusively presumed disabled, and no further analysis is required. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment," and she "bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir.2006) ("[The plaintiff] has the burden of showing that his impairments meet a listing, and he must

show that his impairments satisfy all of the various criteria specified in the listing."); *see also Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir.2009) (holding that the "claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing."). Whether a claimant's impairment equals a listing is a medical judgment, and an "ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).

Medical Listing 14.09 addresses inflammatory arthritis:

> A. Persistent inflammation or persistent deformity of:
>
>> 1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
>>
>> 2. One or more major peripheral joints in each upper extremity resulting in the inability to perforfine and gross movements effectively (see 14.007)
>
> OR
>
> B. Inflammation or deformity in one or more major peripheral joints with:
>
>> 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>>
>> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> OR
>
> C. Ankylosing spondylitis or other spondyloarthropathies, with:
>
>> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.
>
> OR
>
> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>> 1. Limitation of activities of daily living.
>>
>> 2. Limitation in maintaining social functioning.
>>
>> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 14.09.

The ALJ found that despite Plaintiff's diagnosed impairments, the medical evidence of record did not document listing-level severity and that no "medical source mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination." AR 23. The ALJ stated that in making this finding he considered the requirements of Medical Listing 14.09, Plaintiff's inflammatory arthritis, and the impact of Plaintiff's obesity on her other conditions.

However, apart from mentioning the requirements of Listing 14.09, the ALJ did not include any analysis as to how Plaintiff's rheumatoid arthritis failed to meet the requirements of Listing 14.09. Under Listing 14.09, a claimant satisfies a showing of disability when she suffers from inflammatory arthritis combined with fatigue, malaise, and difficulty in concentration, persistence,

and pace. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 14.09. In this case, the ALJ provided no analysis as to how Plaintiff's reported symptoms of fatigue, malaise, and difficulty in concentration failed to satisfy the Listing. In addition, a claimant satisfies a showing of disability under subsection A of Listing 14.09 when she suffers from inflammatory arthritis combined with persistent inflammation of a weight bearing joint and difficulty ambulating, but the ALJ provided no analysis as to how Dr. Parikh's finding that Plaintiff suffered from persistent ankle swelling and metatarsal phalangeal joints degeneration, along with his instruction that Plaintiff ambulate with a cane, failed to satisfy Listing 14.09.

That the ALJ failed to provide any analysis of why Plaintiff's impairments did not satisfy Listing 14.09 is particularly problematic considering that the medical evidence of record suggests that Plaintiff may be disabled under either or both of two subsections of that Listing. The Seventh Circuit Court of Appeals requires that an ALJ thoroughly evaluate whether a claimant meets the requirements of a Listing and avoid a "perfunctory analysis." *Ribaudo,* 458 F.3d at 584. In this case, the Court concludes that the ALJ's finding that Plaintiff did not meet Listing 14.09 based on a rote mention of rheumatoid arthritis is insufficient. The ALJ must assess Plaintiff's impairments including rheumatoid arthritis and all symptoms attendant to the disorder and analyze whether those symptoms satisfy a listing supported by a genuine review and application of the listing criteria.

Accordingly, this case is being remanded. On remand, the ALJ is directed to consider Plaintiff's symptoms and provide a complete analysis of whether Plaintiff meets or medically equals a listing.

**B.    Combination of Plaintiff's Impairments**

Plaintiff also argues that the ALJ failed to explain how he considered the limitations caused

10

by Plaintiff's combination of impairments and how he incorporated those limitations into her RFC. The Commissioner argues that substantial evidence supports the ALJ's decsion.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that the ALJ failed to consider her impairments of skin rashes, COPD, and obesity, and how they interact with her other severe impairments. As to her skin rashes, Plaintiff argues that even if the disorder is a non-severe impairment, the ALJ was obligated to consider evidence of the impairment and the work limitations it may impose in fashioning her RFC. As Plaintiff argues, the ALJ's opinion does not include any discussion of Plaintiff's skin rashes despite their substantial presence in her medical history, nor does he analyze the limiting effect the rashes may have on Plaintiff's ability to manipulate and use her hands. *See Terry*, 580 F.3d at 477 (holding that an ALJ is required to consider all evidence of impairment including those impairments that "would not be considered severe in isolation.").

Plaintiff also argues that her COPD significantly impacts her breathing and that the ALJ erred in not finding that the disorder was a severe impairment. Plaintiff also argues that even if her COPD

11

is not itself a severe impairment, the ALJ erred in finding that it was managed with medication and in failing to incorporate more limitations into her RFC. The ALJ found that Plaintiff's COPD was a non-severe impairment because it did not more than minimally interfere with her ability to perform basic work activity. The ALJ did find that Plaintiff's COPD combined with her arthritis precluded heavier lifting and/or carrying and incorporated that limitation into the RFC. However, the ALJ did not state whether Plaintiff's COPD was considered in fashioning the environmental limitations. Specifically, although the RFC limits Plaintiff's exposure to hazards such as unprotected heights and dangerous machinery, the ALJ did not find that Plaintiff's exposure to environmental irritants that may exacerbate her documented trouble breathing and wheezing–such as exposure to fumes, odors, dusts, gas, poor ventilation, and extreme cold, extreme hot, wetness, and humidity–needed to be limited. On remand, the ALJ is directed to address the combined effects of Plaintiff's several impairments, including COPD, in fashioning her RFC.

The ALJ also failed to fully account for the additional limitations caused by Plaintiff's obestiy. Plaintiff has a fluctuating body mass index ("BMI") of 32.15 to 32.99. Any BMI of 30 or greater is considered obese. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity when assessing a plaintiff's RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform

12

routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Furthermore, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). The requirement that an ALJ thoroughly consider obesity is particularly critical when, as in this case, the claimant also suffers from arthritis. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (remanding in part for failure to consider obesity and arthritis in tandem because the plaintiff's arthritis would naturally "interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both . . . the cumulative effect of the ALJ's decision was to fail to build a rational bridge from the evidence to the finding that [the plaintiff] was not totally disabled."). In this case, although the ALJ noted that Plaintiff's obesity was a severe impairment, he failed to analyze how the disorder may have exacerbated Plaintiff's symptoms of joint stiffness and swelling or her other impairments. The ALJ's failure to substantively address Plaintiff's obesity in combination with her other impairments, especially her arthritis, leaves the Court unable to trace his RFC findings from the evidence of record. *See O'Connor-Spinner*, 627 F.3d at 618 (holding that ALJ must provide a "logical bridge" between the evidence and his conclusions.).

This matter is being remanded for a new RFC. On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged impairments, including her COPD, skin rashes, and obesity, alone and in combination, and provide a logical bridge from the evidence to his conclusion, including a description of the medical evidence on which he bases his determination.

## C. Credibility Assessment

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a

reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ failed to analyze her work history, medical history, daily activities, and testimony as they relate to her pain, and failed to fully consider the nature of her pain and effectiveness of her pain medication. The Commissioner argues that the ALJ thoroughly analyzed all of the relevant factors, and substantial evidence supports his assessment.

In this case, the ALJ found that Plaintiff's complaints about her pain were not fully credible for several reasons. First, the ALJ discounted Plaintiff's reported impairments on the basis of lapses in her treatment and medication and noncompliance with her medical treatments. When considering noncompliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required make a determination about whether noncompliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The record indicates that Plaintiff attends medical appointments several times a year, if not more frequently, and takes numerous medications as directed. The ALJ does not identify any indications in the record that Plaintiff failed to seek appropriate treatment or to follow up on treatment when instructed to do so. Moreover, the ALJ's statement that Plaintiff reported improved

symptoms with pain treatment ignores evidence of record showing that "over time, her medications have been continuously modified for maximum effectiveness" in response to her complaints of pain. AR 26. If anything, the record supports a finding that Plaintiff's pain intensity increased and her treating providers responded with more targeted analgesic treatments rather than that her initial treatment was sufficient. The ALJ also failed to ask Plaintiff about these perceived gaps in treatment, a failure that is especially troubling given the indications in the record that show that there was at least one period during which Plaintiff did not have health insurance. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

The ALJ also references Plaintiff's ability to provide childcare to her grandchildren for pay as a reason to find her less than credible. However, even assuming that Plaintiff received some payment for assisting her family as a childcare provider, continuing to work after disability begins does not necessarily mean that a person is not disabled. As the Seventh Circuit Court of Appeals has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Likewise, "[a] desperate person might force h[er]self to work – or . . . certify that []she is able to work – but that does not necessarily mean []she is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) (citing *Gentle*, 430 F.3d at 867; *Hawkins v. First*

16

*Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)). Earning income does not necessarily show that Plaintiff is capable of work or not disabled under the meaning of the Social Security Act, especially where, as here, it does not appear to have been a full time job and was done to help Plaintiff's family.

Moreover, an ALJ is not free to "casual[ly] equat[e] household work to work in the labor market." *Zurawski*, 245 F.3d at 887. To the extent that the ALJ was using Plaintiff's ability to perform some activities of daily living or occasionally provide childcare for her grandchildren in her home as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562. The ALJ is also reminded that the Seventh Circuit Court of Appeals has repeatedly found that there are "critical differences between activities of daily living and activities in a full-time job" and "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ made several errors in his assessment of Plaintiff's credibility, and a remand is warranted. On remand, the ALJ is directed to thoroughly explain his credibility assessment in accordance with the applicable regulations.

**D.     Relief**

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. However, an award of benefits is not proper when there remain outstanding factual issues, *Briscoe*, 425 F.3d at 356, and the record does not yet support a finding that Plaintiff is disabled. *Allord v. Asture*, 631 F.3d 411, 417 (7th Cir. 2011). In this case, that the ALJ failed to properly weigh the evidence of whether Plaintiff satisfies the requirement of Listing 14.09 does not support a finding by this Court that the evidence demonstrates Plaintiff's disability under the Social Security Act. *See Clifford*, 227 F.3d at 869 (reasoning that a court in its review of the entire administrative record does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of SSA). On remand, the ALJ must review the record and fully explain how all of Plaintiff's limitations are accounted for, supported by evidence, and incorporated by into her RFC. Because the ALJ has not properly weighed all the relevant evidence, this can only be resolved through a remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 16], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 29th day of March, 2016.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record